---
Pinckney *v.* Pomeroy.
---

New trial granted.

[OSWEGO GENERAL TERM, July 8, 1862. *Mullin, Morgan* and *Bacon,* Justices.

---

## PINCKNEY *vs.* POMEROY.

The plaintiff, to enable L. to pay for property purchased of C., signed, as surety, the note of L. for $95. Previous to the execution of this note, and to induce the plaintiff to sign it as surety, L. promised to give him, by way of indemnity, a note signed by himself and the defendant. This note was subsequently given. When the C. note became due, the money to pay it was borrowed of A. on the note of the plaintiff and L., and paid to C. The amount so borrowed of A. was paid to him by the plaintiff. In an action to recover of the defendant the money so paid;

*Held,* 1. That in the note to A., L. was the principal debtor, and the plaintiff was the surety; that so long as the principal borrowed money on the credit of the surety, the debt paid thereby was only paid *sub modo;* it existed still; and, as between them, it was virtually unpaid.

2. That the defendant's note was an operative security until the debt for which the plaintiff was liable was paid by the principal—paid not technically, but really.

3. That the law would not declare a debt paid, when the money to pay it was borrowed on the credit of the first surety.

4. That there was nothing in the case to show that the plaintiff had given time to the principal debtor, so as to discharge the defendant.

5. That the plaintiff was not in a situation to give time, until he had paid the debt and had thereby a right of action against both the principal and surety.

6. That indorsing, from time to time, L.'s paper, to take up prior paper, was not giving or extending time.

7. That there was a valid consideration for the defendant's promise contained in the note signed by him as surety for L., to indemnify the plaintiff.

THIS action was brought, in a justice's court, upon a promissory note, dated June 12, 1858, signed by one Lathrop and the defendant, and delivered to the plaintiff,

Pinckney, to secure him on a note he had signed for the benefit of Lathrop. Pomeroy, the defendant, did not sign the note until several days after it had been signed by Lathrop and delivered to the plaintiff; and the note signed by Lathrop and Pinckney had also been delivered. The note indorsed for Lathrop by the plaintiff was drawn for $95, and delivered to one Carpenter in payment for a horse, bought of the latter by Lathrop. The note so given to Carpenter was afterwards paid by. Lathrop, with money he borrowed of one Amidon, to the amount of $90, and the balance on a judgment and execution out of Lathrop's property. But the money borrowed of Amidon was obtained upon a. note made by Lathrop and signed by Pinckney, for $100, dated June 13, 1859, payable in one year, for the purpose of paying the note held by Carpenter. Ninety dollars of it was thus applied, and the balance of $10 paid on an old debt due from Lathrop to Amidon. Of the making this note and the procuring the money of Amidon the defendant knew nothing. The note held by Amidon was paid by Pinckney after it fell due, in 1860. Pinckney claimed, in the action before the justice, to recover of Pomeroy on the note in suit, so much of the sum paid Amidon as the note held by Carpenter would have amounted to, less the sum of about $13 collected by execution of Lathrop; and he claimed that the note in suit, though given as a security to the note held by Carpenter, continued as a security for the note held by Amidon.

The justice gave judgment for the plaintiff for $97.11, which the county court reversed, and the plaintiff appealed to this court.

*Mr. Burdick,* for the appellant.

I. The note in suit was given by Lathrop as principal, and signed by the defendant as accommodation maker, upon the condition that the plaintiff would sign a note for

like amount with Lathrop as principal and as accommodation maker for him to Carpenter. The incurring the liability by the plaintiff to pay the Carpenter debt, was a good and valid consideration for the note in suit, which was given in pursuance of the agreement between the plaintiff and Lathrop, assented to by the defendant, and when he signed the note the defendant became a party to the agreement with Lathrop to indemnify the plaintiff. The defendant's undertaking related back to the signing by the plaintiff. The defendant bcame bound on the execution and delivery of the note; and became liable to pay on payment by the plaintiff.

II. The continuing by the plaintiff of his liability by signing another note with Lathrop for the same purpose, by the note to Amidon, neither discharged the plaintiff nor the defendant from the original liability. The plaintiff's liability continued for the same object and purpose, until he paid the Amidon note. The defendant's liability continued, and he became liable to pay on payment by the plaintiff. The taking up of the Carpenter note by another note made by Lathrop and the plaintiff, and the time thereby extended, did not operate as a discharge of the defendant. (*See Chapmah* v. *Jenkins,* 31 *Barb.* 164; 14 *Conn.* 334; 11 *N. H.* 390; 18 *N. Y.* 327; 8 *Pick.* 522; 1 *Hill,* 516.) The opinion of the court in 31 *Barbour,* states the principle that governs such cases.

III. There was no substantial change of Lathrop's circumstances; nor was it satisfactorily shown to the justice that the defendant was at all prejudiced by the extending of the time by the second note. The finding of the justice upon that, and all other questions of fact, was authorized by the evidence, and will not be questioned in this court. The evidence objected to was competent to show the agreement and consideration upon which the notes were given; besides, it would be hardly proper to raise it here, the case having proceeded upon other grounds.

IV. From the evidence, the justice was authorized to find, as matter of fact, that the plaintiff borrowed the money with which the note to Carpenter was taken up or paid. Amidon testifies: "When I let Pinckney have the money he gave the credit to the plaintiff."

V. Equitably the judgment of the justice should stand. The essence of the arrangement was, that the defendant was to indemnify the plaintiff and save him harmless. The recovery before the justice was nothing more.

_Mr. Horton_, for the respondent.

I. The payment of the note held by Carpenter canceled the note in suit, and discharged Pomeroy from any obligation. 1. There can be no question that the contract of the defendant, expressed by the note in suit, was a suretyship or guaranty, whereby he undertook that Lathrop would pay the note held by Carpenter, and to save harmless the plaintiff if he did not. 2. The note in suit was given to secure the payment of the note held by Carpenter. That note having been paid, the note in suit, which is merely a guaranty of its payment, is canceled and becomes void. (_Burge on Suretyship_, 119.) 3. The mere fact that the plaintiff signed a note as surety for Lathrop, on which the money was borrowed of Amidon to pay the note held by Carpenter, cannot continue the defendant's liability without greatly altering his contract of surety, and depriving him of rights. (_Rathbone_ v. _Warren_, 10 _John._ 587. _Walsh_ v. _Bailie, Id._ 180. _Elmendorph_ v. _Tappan_, 5 _id._ 176.) A surety can only be held to the precise contract he makes. (1 _Story's Eq. Jur. ch._ 7, § 325. _Nisbet_ v. _Smith_, 2 _Brown Ch._ 579, _and cases cited in notes thereto._) (_a._) Pomeroy became surety for the payment of the note held by Carpenter. To be sure it was paid, by money borrowed of Amidon on a note to which the plaintiff was surety. But this could not affect Pomeroy, especially as he was not a party to the arrangement. (_b._) If Pomeroy

be held to indemnify the plaintiff for paying the note to Amidon, his right to have proceeded against his principal was deferred one year. He is also made surety for another debt of $10. (*c.*) The evidence shows that Lathrop borrowed money of Amidon on his note guarantied by the plaintiff, part of which was applied on a different debt of Lathrop's, and part on the note held by Carpenter. 4. The cases of *Chapman* v. *Jenkins*, (31 *Barb.* 164,) and *Pond* v. *Clark*, (14 *Conn.* 334,) do not apply. There the mortgagors gave, the mortgages in question to secure their own indorser for their own benefit. There is no question of suretyship in those cases.

II. The contract of Pomeroy, in signing the note in suit, was without any consideration and void. 1. The consideration was a precedent debt, or antecedent liability already incurred. 2. The note signed by Lathrop and Pinckney had been delivered to Carpenter for the horse, five days before the plaintiff obtained Pomeroy's signature to the note in suit, having had no previous knowledge of the transaction. 3. Pinckney lost no rights on the faith of Pomeroy's signing the note in suit, nor incurred any liability. The liability had already been incurred without any knowledge of the defendant. The authorities are clear on the point that the contract of Pomeroy was without consideration. (*Comstock* v. *Smith*, 7 *John.* 87. *Livingston* v. *Rogers*, 1 *Caines*, 584. *Elliott* v. *Guise*, 7 *Har. & John.* 457. *Rix* v. *Adams*, 9 *Verm.* 233.)

*By the Court,* MULLIN, J. The plaintiff, to enable Lathrop to pay for the horse purchased of Carpenter, signed the note of Lathrop, as surety, for $95, payable in one year. Before this note was signed, and as an inducement for the plaintiff to sign it as surety, Lathrop promised to give him a note signed by the defendent as security for his (the plaintiff's) signing the Carpenter note. And in a few days after the latter note was signed, the parties met, and the

Pinckney *v.* Pomeroy.

note in suit was drawn, signed and delivered to the plaintiff, in pursuance of the arrangement aforesaid. When the Carpenter note became due, the money to pay it was borrowed of Amidon, on a note of the plaintiff and Lathrop, and $95 of the money so received was paid to Carpenter, and the balance was collected out of Lathrop's property. The plaintiff paid Amidon, and brings this suit to recover of the defendant the money so paid.

The plaintiff was surety for Lathrop, to Carpenter; the defendant became surety for Lathrop to the plaintiff. Both became liable, without any actual consideration moving to them from any other person. The defendant's note was delivered to the plaintiff to indemnify him for such sums as he might pay on the Carpenter note; and until the plaintiff paid, there was no right of recovery against the defendant. The plaintiff has paid the money borrowed to pay Carpenter, and claims to recover the money thus paid, and he is met by the objection that he did not pay the debt which the note in suit was given to secure, but that the note was paid by Lathrop, and that the obligation of the defendant as a surety cannot be extended to the debt to Amidon.

That the debt to Carpenter was paid cannot be denied; that it was paid by Lathrop with his own money, is not true. In the note to Amidon, Lathrop was the principal debtor, and the plaintiff was the surety; the money realized was, in theory, his money, and was applied in extinguishment of his debt. Upon the payment of the Carpenter note, it was extinguished, and no right of action existed in favor of the plaintiff, either on the note or for money paid. The same would have been true, had the plaintiff loaned the money to Lathrop, and taken his note for the amount. In either case the Carpenter note would be paid, but the principal had not paid the debt, so as to relieve the surety from the liability which he assumed, as surety.

As long as the principal borrowed money on the credit

of the surety, the debt paid thereby was only paid *sub modo;* it existed still; as between them it was virtually unpaid.

The defendant's note was an operative security until the debt for which the plaintiff was liable was paid by the principal — paid not technically, but really.

*Chapman* v. *Jenkins,* (31 *Barb.* 164,) decides that, as between Lathrop and the plaintiff, the rights of the latter as surety continued after the original debt was paid, and so long as the money to pay it was realized on paper to which the surety was a party.

In *Norton* v. *Eastman,* (4 *Greenl.* 521,) it was held that a collateral undertaking to guaranty the payment of a debt, is not discharged by the creditor's taking a new stipulation from the debtor with an additional security; nor by any other transaction between him and the creditor, so long as the debt remains unpaid.

In *Pond* v. *Clark,* (14 *Conn.* 334,) where a mortgage was given, conditioned to save the mortgagee harmless from his indorsement of specified notes, and such notes, as they respectively became due, were renewed by the substitution of other notes or drafts, having different sums on them, but the obligation of the original indorsement by the mortgagee was preserved through the whole series of renewals and substitutions, without any new credit being given, and the substituted paper was ultimately paid by him, the debt thus paid being the same debt for the security of which he made the original indorsement; it was held the plaintiff was entitled to enforce the mortgage, to collect the amount thus paid.

If payment by money raised on the responsibility of the surety does not deprive the latter of his rights, as to any security given him for the original debt, is there any reason why a different rule should prevail in favor of another surety to the first surety for such original debt? The latter pledges his property or his credit in order to

Pinckney *v.* Pomeroy.

secure the first surety, the payment of the debt, if he shall be obliged, by reason of the principal's default, to pay it; and although the liability of the surety is sometimes construed *strictissimi juris*, yet the law is not so absurd as to sacrifice, totally, the substance of the arrangement to mere form—to declare a debt paid, when the money to pay it is borrowed on the credit of the first surety.

I am unable to perceive, in the case, any evidence that the plaintiff has given time to the principal, so as to discharge the defendant. The debt, as to which time is given within the meaning of the rule under which the objection is made, must be the debt for which the surety is prosecuted. The plaintiff was not in a situation to give time, until he had paid the debt and had thereby a right of action against both the principal and surety. Since he paid the debt there is no pretense that he has given time to Lathrop. Indorsing, from time to time, Lathrop's paper, to take up prior paper, was not giving or extending time. Nor had the plaintiff, at those times, any cause of action against Lathrop, or even a debt on which an extension could be given.

There was a consideration for the defendant's promise. The plaintiff became surety on the agreement of Lathrop that a note made by the defendant should be given him as security for his signing the note to Carpenter. The defendant, knowing of the arrangement, and to carry it into effect, gave the note in suit. A valid consideration is thus shown. (*Carrol v. Nixon*, 4 *Watts & Serg.* 517.)

I am in favor of reversing the judgment of the county court, and affirming that of the justice.

Judgment accordingly.

[OSWEGO GENERAL TERM, July 8, 1862. *Allen, Mullin, Morgan* and *Bacon,* Justices.]