Evans, J.
dissenting. I do not concur in the opinion of my brethren, and shall state as concisely as I can, the grounds of my dissent. On the 1st May, 1842, there was due to Judge, by Fiske, three quarters rent, for which, on the 7th of May, Fiske gave to Judge his promissory notes, payable at six, seven and eight months. Judge gave a receipt for the notes, expressing that they were to be in full for the rent when paid. It is not pretended that the rights of Judge, as a landlord, are extinguished by these notes, but that the acceptance of them was an agreement to suspend his right of distress for the rent until the time the notes became due. There is no question a landlord may take a note, or other security, in satisfaction of rent, or that he may stipulate, by contract, to suspend the payment of his rent to a future time. But such a contract, to be binding, must have some sufficient consideration to support it; so that the sole question in this case is, whether the promise of Judge, implied from his taking the notes, has a consideration to support it. To me it seems clear there is no consideration ; and therefore the contract was nudum pactum, and not binding on him.
' According to Chitty, and the elem'entary writers, the sufficiency of the consideration must arise either from some benefit resulting to the promissor, or some damage, trouble or prejudice to the promisee.
I suppose it will hardly be contended that the promise of Judge to give Fiske six, seven and eight months to pay a debt already due, and for which he had a right of immediate distress, was any damage, prejudice or inconvenience to Fiske. It was a contract greatly for his benefit, as abundantly appears by his now seeking to enforce it; so that, if there be a sufficient consideration to sustain this contract, it must arise from some benefit resulting to Judge *442 from the notes, which put him in a better condition than he was at the time the notes were given.
This, it seems to me, is resolved by enquiring what were his rights when the notes were received, and what were his rights afterwards. On the 7th May, Judge, as landlord, had the right to issue a distress warrant, under which the bailiff could levy on all the goods on the premises, and, in the course of a very few days, sell the same, and thus realize his rent in money. The right of distress is one of the highest security known to the law. It is even more speedy than an execution, because a sale may be made in less time. The distress might be replevied, but the same might be done if he had levied after the notes were dueand even if replevied, the landlord would have the double security of the goods levied on, and the security to the replevin bond.
Was his condition bettered in any way by the notes % for if it was, I concede he was bound by the contract. He got a negociable security, on which, by endorsement, perhaps, he could raise money at the bank, provided both of them had credit there; but if they were of that class whose notes are not discountable at the bank, he would fail to raise the money in that way. The rule must operate in-all cases, and apply as well to those whose notes may be discounted, as to those who have no bank credit, and to-those who live remote from banks, as to those who are near to them. If the bank would not discount the note,, then he would fail to convert his note into money, except, on such terms as the conscience of a usurer might dictate.. But even if the situation of the parties was such as to enable the landlord to discount the note, he would be liable,, by his indorsement, to the indorsee, to pay in case that the maker did not. I suppose, of course, as the notes were payable at a future time, the accruing interest was added ; but rent due on a written lease, will bear interest as well as a note ; and in this particular the note was no benefit to Judge. The landlord had the double security of the right of immediate distress, and the personal liability of the tenant, which he has agreed to exchange for the personal liability of the maker of the note, with a postponement of *443 his right of distress until the end of the time the note has to run ; and from this agreement it is said the landlord has derived a benefit. I can perceive in it nothing more than a mere gratuitous agreement, which the party making it may at any time retract. It in no legal point of view differs from any other voluntary promise of a creditor to give his debtor a future day of payment, which, I suppose, no one will contend is a contract binding in law. Unless, therefore, there be something in a negotiable or bankable note which elevates it above all other securities for debt, I do not perceive any ground upon which it can be said this contract of Judge, to suspend his rights as a landlord, to a future day, is a binding contract. The notes were produced and tendered back at the time of the distress, andFiske thus placed without detriment in the same condition he was when the notes were signed. He was disappointed, no doubt, in being called on for the rent sooner than he expected to pay it. But this can hardly be a sufficient consideration. If a landlord, in mere kindness, had promised to wait six months for his rent, and had afterwards discovered that his tenant was removing his goods, and arranging his affairs so as to defraud him of his rent, would he not have a right, both in law and conscience, to revoke his promise, and collect his rent 1 And yet, in such case, the tenant might be disappointed in his expectations.
I have thus far considered this casein reference to general principles. I will now consider it in reference to the authorities. No case has been quoted at the bar, nor have I been able to find one, exactly like the present. The cases quoted by the counsel for the appellees, relate to a different subject. The case of Holmes & Drake vs. Decamp, 1 Johns. 33, merely decides what I suppose no lawyer will deny, that if a negotiable note be given for a simple contract debt, the party cannot recover on the original contract before the note is due, and not then unless he shews the note was lost, or produces and cancels it at the trial. The cases of Pintard vs. Tackington, and Burdick vs. Green, 15 Johns. 247, are but an affirmation of the same principle ; and so are all the cases, both English and American, quoted in Chitty on Contracts, 593, ’4 and ’5. All these cases go on a clear and obvious principle, that a note is a *444 better security than an open account. That it is better is obvious. It is negociable ; it bears interest; and as it imports a consideration, the plaintiff is not bound to prove the original contract, and therefore comes within the rule that the taking of a higher and better security, if not an entire extinguishment of the debt, is an extinguishment sub modo, as is said in some of the cases. The right to sue on the original contract is suspended until the note becomes due, and the action will not then lie, unless the note is produced, or accounted for on the trial. But these decisions do not touch the question involved in this case, unless it can be shewn that a promissory note is a higher security than a distress for rent. The case of Price vs. Limehouse, 4 McC. 544, is more like the present than any of the cases which have been cited. In that case a bond had been given for the payment of the rent by instalments. After one instalment was due, but long before the other, a distress was levied for all that was then due by the lease. The amount levied included the whole first instalment, and a part of the second, which, by the condition of the bond, was not due until a year and more afterwards. It does not appear from the report that the question involved in this case was made, but I should infer from that, that it was not supposed to be an available defence, or it would have been noticed either by the counsel or the court. The action in that case was not on the bond ; it was offered as evidence, as the notes were in this case, of the time when the rent was to be paid by the contract of the parties. Nor is it any answer to this to say that the condition of the bond being broken by default in paying up the first instalment, the whole bond was forfeited. But this argument goes too far, as it would justify the levy for the rent not yet due, which, by the condition of the bond, was to be paid at the same time as some which was due, and which w7as levied by the distress.
For the reasons before stated, I was of opinion, and still adhere to it, that the landlord’s taking notes for rent already dpe on a lease, with the right of immediate distress, did not create any legal obligation to wait until the notes became due; and upon the return or tender of the notes, he might, at any time, proceed to collect his rent according to his original rights.