JOHN L. DIBBLE, as Executor of MARY CALLAHAN, Deceased, Respondent, *v.* ASA B. RICHARDSON, as Executor of ANNIE C. RICHARDSON, Deceased, et al., Appellants.

DEBTOR AND CREDITOR — MORTGAGE GIVEN BY DEBTOR'S WIFE TO SECURE HIS PRECEDENT DEBT — WHEN AND TO WHAT EXTENT TESTAMENTARY CANCELLATION OF DEBT RELEASES MORTGAGE. An obligation to return stock borrowed and pledged as collateral or to pay its value if not returned is a debt; a loan of money by the lender of the stock to enable his debtor to redeem and return it, which he does, does not extinguish the debt but continues it in another form; by giving a mortgage upon her property to secure the money so advanced, the sole consideration of which to the knowledge of the creditor is her husband's precedent debt, the debtor's wife, although in form the principal debtor, becomes responsible therefor as his surety only; in the absence of evidence that the mortgage was taken in payment of the debt, the presumption is that it was not so taken and that the debt continued to exist, so that its subsequent testamentary cancellation by the creditor releases the surety and the mortgage ceases to be operative except so far as necessary to enforce it to meet any deficiency of assets for the payment of debts.

*Dibble* v. *Richardson*, 64 App. Div. 520, reversed.

(Argued April 8, 1902; decided May 13, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 23, 1901, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The plaintiff, as one of the executors of the last will of Mary Callahan, deceased, brought this action to foreclose a mortgage given to her by Asa B. Richardson and Annie C., his wife. Mr. Richardson, the other executor, declined to unite as plaintiff and was made a defendant in his representative capacity. The defendants answered separately, alleging that the debt secured by the bond and mortgage was the debt of Mr. Richardson only, and that the testatrix released the same by her last will and testament.

The justice before whom the case was tried found the following facts : On October 10th, 1890, the testatrix " signed and delivered to the defendant, Asa B. Richardson, a paper authorizing the New York Produce Exchange Bank to make him loans from time to time, not to exceed $10,000, against 95 shares of stock owned by said testatrix in the said bank as security therefor. On September 30th, 1893, the said bank loaned to the said Asa B. Richardson $6,000 on his own note, secured by sixty of the said shares. At the time said loan was made there was no law of this state prohibiting a bank from lending money on the security of its own stock, but on June 23rd, 1895, a law was enacted prohibiting such loans on such security." Until then Mr. Richardson remained indebted to the bank in said sum of $6,000, secured by said stock of Mrs. Callahan, and was so indebted when, on or just prior to October 23rd, 1895 the bank demanded a settlement of said loan, because of the change in the law.

" On October 23rd, 1895, Mary Callahan gave to Asa B. Richardson her three drafts or checks on three banks, aggregating $6,000, one of which was payable to her own order and indorsed in blank, and the others payable to bearer, and all of which were indorsed by said Asa B. Richardson." Mr. Richardson deposited the checks in his own bank, drew his check thereon the same day for $6,019.17 and therewith paid his debt to the New York Produce Exchange Bank, which thereupon returned to Mrs. Callahan her certificates of stock. Said sum of $6,000 was loaned by the testatrix to Asa B. Richardson on said 23rd day of October, 1895, and " at the same time

she took back the bond and mortgage (in question) therefor." " The sole consideration moving to the said Annie C. Richard son for the execution and delivery of the said bond and mort- gage was the payment of the said $6,000 to her husband Asa B. Richardson." " For the said sum of $6,000, and in order to procure the same from the said testatrix and in order to secure the payment thereof, the defendant, Annie C. Richard- son, executed and delivered to the said testatrix, at the same time the said money was so paid, the bond and mortgage mentioned in the complaint."

Mrs. Callahan died on the 11th of March, 1900, and the interest on the bond and mortgage was paid to her during her lifetime.   She left a last will and testament, dated April 16th, 1890, whereby, after making various bequests to charitable institutions and personal friends, she made Mr. Richardson her residuary legatee in case he survived her, otherwise Mrs. Richardson was to be the residuary legatee.   She made no allusion to any indebtedness of Mr. Richardson.

By a codicil, dated June 8th, 1895, she provided " That in case any sums of money should be owing to me or to my estate from Asa B. Richardson, such sum or sums shall not be claimed from him by my executors but shall be treated as a bequest to him ; and any evidence of indebtedness from him shall be paid and canceled by my executors."   She revoked the previous disposition of her residuary estate, made Mr. Richardson and John L. Dibble her residuary legatees, and directed that should either of them die in her lifetime, the whole of her residuary estate should go to the survivor.

The bond in question bears the date of October 23rd, but it was not acknowledged until October 25th, 1895.   It was signed by Mrs. Richardson only, who recited therein no indebtedness from herself to Mrs. Callahan, but simply acknowledged, in the usual form, that she was " held and firmly bound " to her in the penal sum of $12,000.   The mortgage, of even date with the bond, was also acknowledged two days later and signed by both Mr. and Mrs. Richardson. It covered lands belonging to Mrs. Richardson which had

been given to her by her husband some time before. In the mortgage Mrs. Richardson recited that she was "duly indebted to the said party of the second part in the sum of $6,000 lawful money of the United States secured to be paid by her certain bond, etc." The condition was that "the said parties of the first part" should pay the sum of $6,000, according to the condition of the bond, "on the 23rd day of October, 1898," with semi-annual interest at the rate of four per cent.

Mrs. Callahan left neither ancestor nor descendant and no near relative. She had lived with Mr. and Mrs. Richardson for 20 years immediately preceding her death. When she died she was 84 years of age, Mr. Richardson was 78 and Mrs. Richardson about 70. Her estate amounted to about $40,000. No evidence was given tending to show that Mrs. Richardson ever owed Mrs. Callahan anything and Mr. Richardson testified that his wife was never indebted to the testatrix in any amount whatever and that he himself paid the interest on the bond and mortgage to Mrs. Callahan as long as she lived, but the trial judge made no finding upon the subject except as stated. Although the principal had been due for nearly two years when the testatrix died, it does not appear that she ever asked for the payment thereof. The trial court found as a conclusion of law that the plaintiff was entitled to the relief demanded in the complaint, which was for the foreclosure of the mortgage with judgment for deficiency against Mrs. Richardson upon the bond. The judgment entered accordingly was affirmed by the Appellate Division, two of the justices dissenting, and the defendants appealed to this court.

*William J. Carr, Edward M. Grout* and *Paul Grout* for appellants. While it is perhaps not essential to show that Mr. Richardson was indebted to Mrs. Callahan when the codicil was executed, since, after all, as far as its effect is concerned, the codicil speaks as of the date of death, not of its making, it is worth notice that the word "debt," often used simply of money,

includes, also, anything that is due or owing, whether money, goods or services. (*Newell* v. *People,* 7 N. Y. 124; *Rodman* v. *Munson,* 13 Barb. 197; 8 Am. & Eng. Ency. of Law [2d ed.], 983.) The absolute terms of a bond and mortgage are always open to explanation by parol or by extrinsic evidence so as to show the real consideration of the instrument; to show that an instrument absolute in terms was intended as collateral or as security for the debt of either the maker or of another; even that the debt to secure which the mortgage was given was different from what the instrument expresses on its face, or was a debt due either from or to a different party than the person named in the instrument. (*Chester* v. *Bank of Kingston,* 16 N. Y. 336; *McKinster* v. *Babcock,* 26 N. Y. 378; *Ferris* v. *Hard,* 135 N. Y. 354; *Hall* v. *Crouse,* 13 Hun, 557; *Bainbridge* v. *Richmond,* 17 Hun, 391; *Durfee* v. *Knowles,* 2 N. Y. Supp. 466; *Neer* v. *Oakley,* 2 N. Y. Supp. 482; *Commercial Bank* v. *Cunningham,* 24 Pick. 270; Thomas on Mort. § 293; Abbott's Trial Ev. 630; *McCrea* v. *Purmort,* 16 Wend. 460; *Horn* v. *Keteltas,* 46 N. Y. 605.) Up to and at the very moment that his wife made this bond and mortgage, Mr. Richardson owed Mrs. Callahan this $6,000, and it cannot be said that he has not continued to be so indebted because of the obligation which his wife made. (*Shute* v. *Taylor,* 61 N. J. L. 256; 24 Am. & Eng. Ency. of Law [1st ed.], 720; Thomas on Mort. §§ 215, 610; *Smith* v. *Townsend,* 25 N. Y. 479; *Bank of Albion* v. *Burns,* 46 N. Y. 170; *Brown* v. *Mason,* 58 App. Div. 395; Brandt on Suretyship, § 35; *Brown* v. *Mason,* 55 App. Div. 395; Abbott's Trial Ev. 1038; *Neimcewicz* v. *Gahn,* 3 Paige, 614; 11 Wend. 312; *Dickinson* v. *Codwise,* 1 Sandf. Ch. 214; *Loomer* v. *Wheelright,* 3 Sandf. Ch. 135; *Vartie* v. *Underwood,* 18 Barb. 651; *E. S. Bank* v. *Roop,* 80 N. Y. 591; *Grow* v. *Garlock,* 97 N. Y. 81; *Hubbard* v. *Gurney,* 64 N. Y. 457; *Chester* v. *Bank of Kingston,* 16 N. Y. 336.) The burden of proof was upon the plaintiff on the whole case and was not shifted to the defendants. (*F. L. & T. Co.* v. *Siefke,* 144 N. Y. 359; *Vartie* v. *Underwood,* 18 Barb. 563.)

*Edwin · Countryman* and *Everett Masten* for respondent. The testimony of Asa B. Richardson was improperly admitted over plaintiff's objections, and is, therefore, not available to the defendants in support of any contention that any of defendants' findings were improperly refused, nor of a contention that upon the findings made the decision should have been for defendants. (Code Civ. Pro. § 829 ; *Konitsky* v. *Meyer,* 49 N. Y. 571 ; *Heiser* v. *Hatch,* 86 N. Y. 614 ; *Troy* v. *T. & L. R. R. Co.,* 49 N. Y. 657 ; *Port Jervis* v. *F. Nat. Bank,* 96 N. Y. 550 ; *Church* v. *Howard,* 79 N. Y. 415 ; *Redfield* v. *Redfield,* 110 N. Y. 671.) No facts were proved to sustain a finding that the husband was Mrs. Callahan's debtor, or the wife a surety only, or that Mrs. Callahan had notice of such relation. (Brandt on Suretyship, § 37 ; *Marsh* v. *Pike,* 1 Sandf. Ch. 210 ; *Shepherd* v. *May,* 115 U. S. 505 ; Burge on Suretyship [1st Am. ed.], 3 ; 2 Greenl. on Ev. § 112 ; *Spear* v. *Wood,* 20 Cal. 659 ; *Niemcewicz* v. *Gahn,* 11 Wend. 325 ; *Martin* v. *Roberts,* 30 Hun, 255.) The provision of the codicil forgiving any sums of money owing by Richardson and directing the surrender of any evidence of indebtedness from him, was not intended, and is not sufficient, to discharge the bond and mortgage. (*Matter of Lee,* 141 N. Y. 58.)

VANN, J. The defendants, by their exception to the conclusion of law, raised the question whether that conclusion was supported by the facts found. If the demand secured by the bond and mortgage was the debt of Mrs. Richardson, as principal debtor, the conclusion was clearly right ; but if it was the debt of Mr. Richardson, and his wife, in fact and to the knowledge of Mrs. Callahan, merely became surety for him, the codicil acted upon the debt and by canceling it released both. As the action is in equity, which " regards not the form but the substance and intent of the transaction," the court, led by parol evidence, may look beneath the surface and learn all the facts. (*Neimcewicz* v. *Gahn,* 3 Paige, 614 ; 11 Wend. 312 ; *Hubbard* v. *Gurney,* 64 N. Y. 457.) Such

evidence does not affect the terms of the contract, which still binds both parties in the same manner and to the same extent, but it may " prove a collateral fact and rebut a presumption."

When the facts show that two debtors, as between themselves, are principal and surety and this is known to the creditor, he is bound to respect the relation, even if by the terms of the security held by him, the real surety occupies the position of principal. (*Grow* v. *Garlock*, 97 N. Y. 81.)

When Mr. Richardson borrowed Mrs. Callahan's stock he impliedly promised to return it to her upon demand, or to pay her its value. He thus became indebted to her, for in a general sense a debt includes not merely money due by contract, but whatever one is bound to render to another, whether money, goods or services. He did not return the stock and more than two years after he had pledged it to secure a loan to himself, she lent him the money to redeem it by paying his debt to the bank. He used the money for that purpose and procured the release of her collateral, yet his debt to her was not extinguished but continued in another form. Solely in consideration of this debt she accepted the bond of Mrs. Richardson, secured by a mortgage on her property. Mrs. Richardson owed her nothing, but Mr. Richardson owed her $6,000, the outcome of a transaction which had its origin more than two years before. His debt to Mrs. Callahan, as she knew, was not paid, but was converted from an obligation to return borrowed stock into one to pay borrowed money. There was no new consideration but it was the same debt all the time. Mrs. Callahan evidently regarded it as a debt in 1895, when she changed her will to provide for it, for the codicil could apply to nothing else. She knew all the facts and was aware that Mrs. Richardson owed her nothing, while Mr. Richardson owed her the debt incurred when he borrowed the stock and which finally culminated in the money lent to redeem it.

As we read the findings, at the moment the bond and mortgage were given, Mr. Richardson owed Mrs. Callahan a precedent debt, which was the sole consideration for the new

security.   He had the stock at first and then the money and it was for him to repay it, but his wife became responsible for the debt and mortgaged her property to secure it.   By operation of law, therefore, and regardless of the form of the transaction, she became surety for him, as the principal debtor. (*Bank of Albion* v. *Burns*, 46 N. Y. 170; *Erie County Savings Bank* v. *Roop*, 80 N. Y. 591; 1 Brandt on Suretyship [2d ed.], § 35.)

The question remains whether this transaction canceled or extinguished the debt of Mr. Richardson.   As there was no agreement that the bond and mortgage should be accepted as payment, the effect thereof upon the debt depends upon presumption.   The rule governing the subject is well settled. Where a creditor accepts the obligation of a third party for a debt contracted contemporaneously, the presumption is that it was taken in payment, and the burden of proving the contrary rests upon him who asserts it.   Where, however, the obligation is received for a precedent debt, the presumption is that it was not taken in payment and the burden of proof is shifted accordingly.   (*Noel* v. *Murray*, 13 N. Y. 167, 171; *Gibson* v. *Tobey*, 46 N. Y. 637, 640; *Hall* v. *Stevens*, 116 N. Y. 201, 206; *Whitbeck* v. *Van Ness*, 11 Johns. 409.)

As the bond and mortgage were received for a precedent debt, the burden of showing that it was taken in payment rested upon the plaintiff who furnished no evidence upon the subject, and hence, the presumption that it was not taken in payment must prevail.   Therefore, upon the facts as they now appear, the old debt of Mr. Richardson was still in existence when Mrs. Callahan died, and this indebtedness of the husband, as principal, being canceled by the provisions of the codicil, his wife, as surety, was released also.   According to those facts, the bond and mortgage ceased to be operative upon the probate of the will and codicil, except so far as it might become necessary to enforce them in order to meet any deficiency of assets for the payment of debts, etc.

We think that the conclusion of the learned trial justice is

not supported by the facts found by him, and that those facts required the conclusion that the complaint should be dismissed. As further investigation, however, may, by the introduction of new evidence, result in changing the facts, we do not dismiss the complaint, but reverse the judgment and order a new trial, with costs to abide the event.

PARKER, Ch. J., BARTLETT, HAIGHT, MARTIN, CULLEN and WERNER, JJ., concur.

Judgment reversed, etc.